MALINDA G. THOMPSON, Plaintiff v. WAL-MART STORES, INC., a Delaware Corporation, Defendant

No. COA99-1044

(Filed 5 July 2000)

**1. Premises Liability— slip and fall—constructive knowledge**

The trial court did not err in a slip and fall case by allowing defendant-store's motion for a directed verdict because: (1) plaintiff did not allege that defendant created the dangerous condition that caused her injury; (2) plaintiff offered no evidence showing that any of defendant's employees had actual knowledge of the spill; (3) plaintiff did not offer direct evidence that defendant had constructive knowledge of the spill based on how long it was in the aisle; and (4) plaintiff testified that the aisle was clean and well-lit, and that the puddle itself was clear and free of any debris, negating the inference that the spill must have existed for a long time.

———————————

THOMPSON v. WAL-MART STORES, INC.

[138 N.C. App. 651 (2000)]

## 2. Premises Liability— slip and fall—store's inspection guidelines

Although plaintiff contends that defendant-store's failure to follow its own guidelines about inspecting its store was some evidence of negligence, the trial court did not err in a slip and fall case by allowing defendant's motion for a directed verdict because: (1) evidence showing the store did not adhere to the corporation's timetable for inspecting the store does not also show the store failed to keep its store clean; (2) even if the store followed its safety sweep guidelines according to schedule, the sweep would have taken place after plaintiff's fall; and (3) the pertinent aisle's overall cleanliness indicates that an employee had recently inspected the aisle.

Appeal by plaintiff from judgment entered 23 March 1999 by Judge Russell G. Walker, Jr. in Stanly County Superior Court. Heard in the Court of Appeals 7 June 2000.

*Law Offices of Chandler deBrun Fink & Hayes, by Walter L. Hart IV, for plaintiff-appellant.*

*Guthrie, Davis, Henderson & Staton, P.L.L.C., by K. Neal Davis and Kimberly R. Matthews, and Stephanie D. Gordon of Wal-Mart Stores, Inc., for defendant-appellee.*

WYNN, Judge.

While shopping at the Wal-Mart store in Albemarle, North Carolina on 29 July 1995, Malinda G. Thompson slipped and fell while reaching for an item in the shampoo aisle. On the floor, she saw some small pieces of glass tucked up under the overhang of the lowest shelf. She also saw and felt a puddle that was clear, slimy, thick, and about the size of a dinner plate.

Ms. Thompson stood up and looked for an employee in the area. Not finding anyone, she walked to Wal-Mart's garden center, where she told an employee named Barbara Gregory that she fell in some shampoo and hurt her knee. Ms. Thompson showed her the puddle and Ms. Gregory cleaned it up. Ms. Thompson then made some purchases and left the store.

Afterwards, Ms. Thompson brought an action against Wal-Mart Stores, Inc., alleging that Wal-Mart was negligent in not cleaning up the spill and in failing to warn her about the spill, and that she was

proximately injured as a result of the fall. Wal-Mart denied her allegations of negligence and asserted that Ms. Thompson's injuries were caused by her own contributory negligence.

A trial on this action began on 10 March 1999. At the close of Ms. Thompson's evidence, the trial court granted Wal-Mart's motion for a directed verdict under N. C. R. Civ. P. 50(a), finding that Ms. Thompson's evidence was insufficient as a matter of law to establish a claim for relief against Wal-Mart. Ms. Thompson appeals to this Court.

---

Ms. Thompson argues that the trial court erred in allowing Wal-Mart's motion for a directed verdict because she presented sufficient evidence to have the jury decide the issues in question. We disagree.

Our review of whether the trial court properly granted Wal-Mart's motion for a directed verdict is limited to a determination of whether the evidence was sufficient to go to a jury. *See Alston v. Herrick,* 76 N.C. App. 246, 249, 332 S.E.2d 720, 722 (1985), *aff'd,* 315 N.C. 386, 337 S.E.2d 851 (1986). We review the evidence in the light most favorable to the non-moving party, accepting the non-moving party's evidence as true and giving her the benefit of reasonable inferences. *See Hunt v. Montgomery Ward and Co., Inc.,* 49 N.C. App. 642, 644, 272 S.E.2d 357, 360 (1980). Reasonable inferences must be drawn from established facts, not other inferences or speculation. *See Lane v. Bryan,* 246 N.C. 108, 112, 97 S.E.2d 411, 413 (1957).

To present a *prima facie* case based on negligence, a plaintiff must present evidence that the defendant had a duty to conform to a certain standard of conduct, the defendant breached that duty, and the breach of duty was the proximate cause of the plaintiff's injury. *See Jenkins v. Stewart & Everett Theaters, Inc.,* 41 N.C. App. 262, 265, 254 S.E.2d 776, 778, *disc. review denied,* 297 N.C. 698, 259 S.E.2d 295 (1979).

In North Carolina, a store owner's duty to its customers is to use ordinary care to keep its store in reasonably safe condition and to warn of hidden dangers or unsafe conditions of which the store owner knows or should know. *See Norwood v. Sherwin-Williams Co.,* 303 N.C. 462, 467, 279 S.E.2d 559, 562 (1981). To show that a store owner breached its duty of care, a plaintiff must show that the store owner either negligently created the condition causing her injury or negligently failed to correct the condition after actual or constructive

knowledge of its existence. *See Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 64, 414 S.E.2d 339, 342-43(1992).

**[1]** In the case at bar, Ms. Thompson did not allege that Wal-Mart created the dangerous condition that caused her injury. She also offered no evidence showing that any Wal-Mart employee had actual knowledge of the spill. Our inquiry, then, is whether Wal-Mart was negligent because it had constructive knowledge of the spill.

The plaintiff bears the burden of showing that a dangerous condition existed for such a period of time that the defendant through the exercise of reasonable care should have known of its existence. *See Carter v. Food Lion, Inc.*, 127 N.C. App. 271, 275, 488 S.E.2d 617, 620, *disc. review denied*, 347 N.C. 396, 494 S.E.2d 408 (1997). Constructive knowledge of a dangerous condition can be established in two ways: the plaintiff can present direct evidence of the duration of the dangerous condition, or the plaintiff can present circumstantial evidence from which the fact finder could infer that the dangerous condition existed for some time. *See Nourse v. Food Lion, Inc.*, 127 N.C. App. 235, 241, 488 S.E.2d 608, 612, *aff'd*, 347 N.C. 666, 496 S.E.2d 379 (1998). Circumstantial evidence may be used to establish an inference. *See Phelps v. City of Winston-Salem*, 272 N.C. 24, 28, 157 S.E.2d 719, 722 (1967). However, inferences must be based on established facts, not upon other inferences. *See Lane v. Bryan, supra*. In other words, a jury may draw an inference from a set of facts, but may not then use that inference to draw another inference.

In this case, Ms. Thompson presented no direct evidence about how long the liquid was in the aisle. She instead presented circumstantial evidence, trying to establish that the liquid had been there for some time. Her evidence included the existence of the puddle and the pieces of glass hidden under the shelf. She also presented evidence showing that no one at Wal-Mart could say when the shampoo aisle had been cleaned last. However, to reach the conclusion that Wal-Mart should have known about the spill, a jury would have to make a number of inferences not based on established facts. For instance, a jury would have to infer that the spill came from a glass container; that the glass under the shelf came from a glass container as opposed to some other glass item; that the glass under the shelf came from the same glass container which held the liquid; that someone cleaned up some of the broken glass container and hid the rest under the shelf, but left the puddle on the ground free of broken glass. The jury would also have to speculate, without factual support, about how long the spill existed. To reach the conclusion that the liquid had

been on the floor a long time, a jury would have to make too many inferences based on other inferences. We uphold the trial court's decision to find as a matter of law that Ms. Thompson's evidence cannot support the conclusion that Wal-Mart had constructive notice of the spill.

In affirming the trial court's decision we acknowledge that Ms. Thompson compares the facts of the case at bar with the facts of four other cases in which we held that the question of whether a store had constructive knowledge of a dangerous condition should go to a jury. However, those four cases are distinguishable from the case at bar.

In *Nourse v. Food Lion, supra,* and *Carter v. Food Lion, supra,* the plaintiffs in each case slipped on floors that were littered with debris. In both cases, it was clear from the amount and type of debris that the debris must have been on the floor a long time—long enough for the defendant stores to have constructive knowledge of its existence. In the case before us, Ms. Thompson herself testified that the shampoo aisle was clean and well-lit, and that the puddle itself was clear and free of any debris. Because the aisle was clean, a jury could make no inference that the spill must have existed for a long time.

Ms. Thompson also relies on *Mizell v. K-Mart Corp.*, 103 N.C. App. 570, 406 S.E.2d 310, *aff'd*, 331 N.C. 115, 413 S.E.2d 799 (1992), to support her proposition that Wal-Mart had constructive knowledge of the spill. The plaintiff in that case slipped in a puddle of coffee in the defendant store's vestibule. The plaintiff offered no evidence other than the testimony of a witness who said he watched the vestibule for 20 minutes and saw no spills during that time. *Mizell* is distinguishable, however, because the plaintiff could establish that the dangerous condition existed for at least 20 minutes before his fall. In the case at bar, Ms. Thompson offered no evidence about how long the spill was on the floor. A jury, therefore, could make no reasonable inference that it was there for any length of time. *See also France v. Winn-Dixie Supermarket, Inc.*, 70 N.C. App. 492, 493, 320 S.E.2d 25 (1984), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 889 (1985) (holding that mere speculation about how long a dangerous condition existed was not sufficient to take the case to a jury).

Finally, Ms. Thompson compares her case to *Kennedy v. K-Mart Corp.*, 84 N.C. App. 453, 352 S.E.2d 876 (1987). In that case, a jury was allowed to decide whether the defendant store had constructive

knowledge of a spill. That case is also distinguishable from the case at bar because under the facts of that case, a jury needed to make only one fact-based inference to conclude that the defendant had constructive knowledge of the spill. As we already discussed, Ms. Thompson's facts do not lead to direct inferences of Wal-Mart's negligence; rather, a jury would need to make too many tenuous inferences to conclude that Wal-Mart had constructive knowledge of the spill.

[2] Ms. Thompson also argues that Wal-Mart's failure to follow its own guidelines about inspecting its store was some evidence of negligence. In general, evidence of a defendant violating its own voluntary safety standards constitutes some evidence of negligence. *Peal v. Smith*, 115 N.C. App. 225, 231, 444 S.E.2d 673, 677 (1994), *aff'd per curiam*, 340 N.C. 352, 457 S.E.2d 599 (1995). The plaintiff bears the burden of producing evidence that the defendant breached its own safety standards. *See id.*

Ms. Thompson presented evidence of Wal-Mart's corporate guidelines that required its employees to provide a safe working and shopping environment by periodically inspecting the store. She also presented evidence that this particular Wal-Mart store did not follow the corporation's timetable about inspecting its store. However, the evidence showing that Wal-Mart did not adhere to the timetable does not also show that Wal-Mart failed to keep its store clean. Ms. Thompson showed only that Wal-Mart did not clean the shampoo aisle at a specific time—she does not show that Wal-Mart breached its safety policy by not cleaning the aisle at all. In fact, even if Wal-Mart had followed its safety sweep guidelines according to schedule, the sweep would have taken place after Ms. Thompson's fall, thereby doing her little good. Finally, the aisle's overall cleanliness indicates that an employee had recently inspected the aisle—evidence tending to show that Wal-Mart adhered to its safety guidelines, not ignored them.

For the foregoing reasons, we affirm the trial court's directed verdict favoring the defendant.

Affirmed.

Judges MARTIN and McGEE concur.